UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. **4:25-CR-00155-SRC** |
| v. ) | |
| ) | |
| TONIA HADDIX, ) | |
| ) | |
| Defendant. ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Tonia Haddix, represented by defense counsel Justin K. Gelfand, and the United States of America (hereinafter "United States" or "Government"), represented by Assistant United States Attorney Hal Goldsmith and the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts One, Two and Three of the Information, the United States agrees that no further federal prosecution will be brought in this District relative to the defendant's perjury, obstruction, and criminal contempt in Case Number 4:16-CV-02163 SRC, of which the Government is aware at this time.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

### 3. ELEMENTS:

As to Counts One and Three, the defendant admits to knowingly violating Title 18, United States Code, Section 1623(a) (Perjury), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1. Defendant testified under oath, or submitted a declaration made under penalty of perjury, before a Court;

2. Such testimony or statements made in the declaration were false in whole or in part;

3. At the time she so testified or declared, the defendant knew her testimony or statements were false; and,

4. The false testimony or declaration was material.

As to Count Two, the defendant admits to knowingly violating Title 18, United States Code, Section 1503(a) (Obstruction of Justice), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1. Defendant submitted a pleading which contained materially false statements in a judicial proceeding;

2

    2.      Defendant knew that the judicial proceeding was pending;

    3.      By submitting the pleading which contained materially false statements, Defendant corruptly endeavored to influence, obstruct and impede the due administration of justice.

### 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On December 30, 2016, Missouri Primate Foundation, et al. filed its Complaint for Declaratory and Injunctive Relief against People for the Ethical Treatment of Animals, Inc. (hereinafter referred to as "PETA"), et al., Case number 4:16-CV-02163-SRC.[1] That case remains pending before the District Court for the Eastern District of Missouri. On June 23, 2017, PETA filed its Counterclaim in that case. On September 21, 2017, the District Court granted PETA's Motion to dismiss all counts of the initial Complaint, leaving PETA's Counterclaim pending. On March 9, 2020, the District Court entered its Order allowing PETA to add Tonia Haddix, Defendant herein, as a counterclaim defendant in the civil proceeding then pending, Case Number 4:16-CV-02163-SRC. On March 18, 2020, PETA did, in fact, file its Amended Counterclaim adding Tonia Haddix as a Counterclaim Defendant. Thereafter, Defendant Tonia Haddix participated fully in that civil proceeding.

On October 2, 2020, the District Court entered its Consent Decree requiring, among other things, that Defendant Haddix take certain steps relative to the chimpanzee Tonka, then in

---

[1] The civil case was originally assigned to District Judge Catherine Perry. Following her November 22, 2024 referral to the United States Attorney's Office, Judge Perry recused herself from further involvement in the case, and the case was reassigned to Chief District Judge Stephen Clark.

Defendant Haddix's possession. What followed, based upon Defendant Haddix's failure to comply with the provisions of the District Court's Consent Decree as to chimpanzee Tonka, among other violations, were a series of Motions seeking civil contempt against Haddix filed by PETA. Thereafter, the District Court entered a number of Orders granting Temporary Restraining Orders against Defendant Haddix, and finding Defendant Haddix in Civil Contempt relative to the District Court's determination that Defendant Haddix had violated provisions of the October 2, 2020 Consent Decree as well as provisions of the District Court's Restraining Orders and Civil Contempt Orders. On March 26, 2021, the District Court issued a Temporary Restraining Order against Defendant Haddix requiring, among other things, that Haddix not transfer the chimpanzee Tonka, and continue to provide appropriate caregiving to him. On July 14, 2021, the District Court entered its Order requiring, among other things, that the chimpanzee Tonka and six other chimpanzees be transferred from Defendant Haddix's possession to the Center for Great Apes, and prohibiting Defendant Haddix from moving or transferring the chimpanzee Tonka other than as Ordered. During the July 14, 2021 Hearing, Defendant Haddix, who was not represented by counsel, falsely claimed that the chimpanzee Tonka had died, and the Court Ordered Defendant Haddix to provide proof of death within seven days, which Defendant Haddix failed to do. The District Court's July 14, 2021 Order provided, among other things, that the transfer of Tonka and the six other chimpanzees to the Center for Great Apes be carried out by representatives of PETA, representatives of the Center for Great Apes, and Deputy U.S. Marshals. On July 28, 2021, access was only provided to the six chimpanzees which were duly transferred to the Center for Great Apes, but no information was provided as to the whereabouts of the chimpanzee Tonka.

On August 2, 2021, PETA filed its Fourth Motion seeking Civil Contempt against Defendant Haddix for failure to transfer the chimpanzee Tonka as ordered by the District Court. On August 16, 2021, Defendant Haddix, who was not represented by legal counsel, filed her Declaration with the District Court, under penalty of perjury, which contained the materially false statement that, "On May 30, 2021, Tonka Died. On that same date, Jerry Aswegan cremated Tonka's body. After the cremation, he gave me Tonka's cremated remains. Since then, I have retained—and continue to retain—Tonka's remains." Defendant Haddix well knew at that time that the chimpanzee Tonka was not dead, but alive and living in a location known to the Defendant. On December 27, 2021, Defendant Haddix filed in the District Court her Pro Se Motion to Dismiss With Prejudice PETA's Fourth Motion seeking Civil Contempt. In that Motion, Defendant Haddix made numerous materially false averments that the chimpanzee Tonka was dead. Defendant Haddix well knew at that time that the chimpanzee Tonka was not dead, but alive and living in a location known to the Defendant. Defendant's materially false statements influenced, obstructed and impeded the due administration of justice in that pending civil case. On January 5, 2022, the District Court convened a Hearing on PETA's Fourth Motion seeking Civil Contempt against Defendant Haddix. At Defendant Haddix's request, she was allowed to appear at that Hearing via Zoom. During her sworn testimony in that Hearing, during which she was not represented by legal counsel and during which she was appearing as a witness, Defendant Haddix made materially false statements, including that on May 30, 2021, "…and then I went in and I opened the cage door and [Tonka] was dead. He was dead." "…we took him around and let the chimps say good-bye. Then we put him in the Gator and we backed the Gator up against the truck, the bed of the truck,. The tailgate, and then we put his body over

5

into the truck and then he left." "…and I waited for Jerry to call me, to let me know [that he had completed his cremation.]" "…I wanted to keep trying to save Tonka if I could. But then he just died on his own, so there was no saving him." Based upon Defendant Haddix's materially false testimony, the District Court denied PETA's Fourth Motion seeking civil contempt against her. On June 2, 2022, based upon newly discovered evidence presented to the District Court by PETA that the chimpanzee Tonka was alive, the District Court entered its Temporary Restraining Order requiring Defendant Haddix to cooperate in the transfer of the chimpanzee Tonka from her possession to a facility designated by PETA. On June 8, 2022, pursuant to the District Court's Order, representatives of PETA as well as representatives of the Save the Chimps Foundation were able to transfer the chimpanzee Tonka to a Save the Chimps sanctuary, where Tonka continues to live to this date. On November 22, 2024, the District Court referred Defendant Tonia Haddix to the United States Attorney's Office for criminal investigation based upon Defendant Haddix's alleged failures to comply with numerous prior Orders of the District Court in the civil case, Number 4:16 CV 02163 SRC.

5. **STATUTORY PENALTIES:**

The defendant fully understands that the maximum possible penalty provided by law for each of the crimes charged in Counts One and Three to which the defendant is pleading guilty is imprisonment of not more than five (5) years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than three (3) years. The defendant fully understands that the maximum possible penalty provided by law for the crime charged in Count Two to which the defendant is pleading guilty is imprisonment of not more than ten (10) years, a fine of not more than $250,000, or both such

imprisonment and fine. The Court may also impose a period of supervised release of not more than three (3) years.

## 6. U.S. SENTENCING GUIDELINES: 2024 MANUAL:

The defendant understands that these offenses are affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

**Counts One and Three.**

a. **Chapter 2 Offense Conduct:**

(1) **Base Offense Level**: The parties agree that the base offense level is 14, as found in Section 2J1.3(a).

(2) **Specific Offense Characteristics**: It is the position of the United States that 3 levels are added because the perjury resulted in substantial interference with the administration of justice, pursuant to Section 2J1.3(b)(2). Defendant reserves the right to argue that this enhancement does not apply and to have the sentencing court make a determination at the time of sentencing as to whether this enhancement applies.

b. **Chapter 3 Adjustments:**

**Acceptance of Responsibility:** The parties agree that, should Defendant's adjusted offense level be 16 or greater, 3 levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties further agree that, should Defendant's adjusted offense level be less than 16, 2 levels should be deducted pursuant to

7

Section 3E1.1(a), because the defendant has clearly demonstrated acceptance of responsibility. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**Other Adjustments:** It is the position of the parties that the Zero-Point Offender Adjustment pursuant to Section 4C1.1 applies and that 2 levels should be deducted.

**Estimated Total Offense Level:** The United States estimates that the Total Offense Level is 12. Defendant reserves the right to argue that the Total Offense Level is 10.

**Count Two.**

**a. Chapter 2 Offense Conduct:**

**(1) Base Offense Level:** The parties agree that the base offense level is 14, as found in Section 2J1.2(a).

**(2) Specific Offense Characteristics:** It is the position of the United States that 3 levels are added because the perjury resulted in substantial interference with the administration of justice, pursuant to Section 2J1.2(b)(2). Defendant reserves the right to argue that this enhancement does not apply and to have the sentencing court make a determination at the time of sentencing as to whether this enhancement applies.

**b. Chapter 3 Adjustments:**

8

**Acceptance of Responsibility:** The parties agree that, should Defendant's adjusted offense level be 16 or greater, 3 levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties further agree that, should Defendant's adjusted offense level be less than 16, 2 levels should be deducted pursuant to Section 3E1.1(a), because the defendant has clearly demonstrated acceptance of responsibility. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**Other Adjustments:** It is the position of the parties that the Zero-Point Offender Adjustment pursuant to Section 4C1.1 applies and that 2 levels should be deducted.

**Estimated Total Offense Level:** The United States estimates that the Total Offense Level is 12. Defendant reserves the right to argue that the Total Offense Level is 10.

**Grouping:** Because the perjury and obstruction of justice offenses arise from false testimony, false declarations made under penalty of perjury, and false statements in pleadings in the same case, the parties agree that the offenses group as closely related counts pursuant to Section 3D1.2(a) and (b). As such the parties agree that no additional levels are added.

**Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level of 12 or 10 as per the parties' respective positions, and, after determining a Sentencing Guidelines range, sentences the defendant within or below those respective ranges, then, as part of this agreement, the defendant hereby waives all rights to

appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the Total Offense Level of 12 or 10 per the parties' respective positions, and sentences the defendant within or above those respective ranges.

    **b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    **c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

## 8. OTHER:

    **a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

    **b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

11

 **c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

 **d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $300, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

 **e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

 **f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts

allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

## 8. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives her rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial

13

will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 9. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

14

10. **CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

11. **NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

March 31, 2025
Date

HAL GOLDSMITH
Assistant United States Attorney

3-31-2025
Date

TONIA HADDIX
Defendant

March 31, 2025
Date

JUSTIN K. GELFAND
Attorney for Defendant

15